Good morning, Gary Burcham on behalf of appellant Bogar Agudo. This case was all about knowledge. Did Mr. Agudo know that the car he was driving down Interstate 15 had drugs hidden in the gas tank? Instead of the government using the relevant and probative evidence from this case to try to show that, the government was allowed to introduce an admissible, inflammatory, and improper evidence in three separate areas to try to prove that. Number one, the deconfliction testimony. Number two, the expert testimony regarding the meaning of the text message and the call logs. And number three, the Rule 404B evidence. Case agent Kerr testified about the contents of the cell phone and he focused in large part on a text message which was received on the phone of Mr. Agudo around the time of this incident. And in his investigation of this text message, the case agent put the phone number that the message came from into a law enforcement database and to see if it came up in any other cases or investigations. And the government asked him if it did and he said no it did not. Instead of then moving on to other evidence in the case, the government asked case agent Kerr if any of the other phone numbers in the telephone numbers, which had no connection at all to this case, had come up in this analysis. And case agent Kerr testified that yes, three other numbers in the telephone had come up as being connected to ongoing DEA investigations. Now the government, I think as a must, concedes that it was error for this second question to be asked. The question about the other unconnected phone numbers in the telephone. But then the government quickly shifts over to a basically no harm no foul analysis that this evidence wasn't really that prejudicial, number one. And number two, that the evidence at trial of Mr. Agudo's guilt was overwhelming. And we disagree on both fronts. Starting with the prejudice from this evidence, I don't really think it gets much worse if someone's on trial in a drug case than for the government to say that contacts in his telephone are linked to other ongoing DEA investigations. It paints the defendant not just as someone who is charged in this particular case, but as someone who is likely or probably involved in other investigations. Was there a curative instruction that was given? No, there was no objection. No objections, so it was plain error that you're talking about here. No request for curative instruction whatsoever. And the court, what was the court's reaction to that again? There was no reaction to it. No reaction at all. It just was out there and then the case went forward. Nobody said anything whatsoever, neither the defense counsel nor the judge. Right. And the government argued that in its brief. I have a couple of responses. First of all, I think this evidence very much stood on its own in terms of its effect and its power. I don't think this was something that needed to be followed up on. It was a very plain question and a very plain answer. And it unequivocally said that the numbers in his telephone were linked to other investigations being prosecuted by the DEA. And then in terms of it not being argued later, I don't honestly know how this could have been argued with a straight face by the prosecutor. It was evidence that was clearly irrelevant. It was evidence that wasn't tied at all to the facts of this case. And so the fact that it wasn't this evidence, which sort of was out in left field, ever would have been tied into the facts of this case. And the court gave no curative instructions on its own either, I suspect. Correct. That's correct, Your Honor. So we get to, was the evidence of guilt overwhelming against Mr. Agudo? And I would submit that it absolutely was not. These cases in San Diego are hard cases, are often hard cases for the government to prove, year in and year out. These cases result in acquittals. They result in hung juries. Because it's not always easy for the government to prove that someone driving a car, especially not their car, knows that something is hidden inside the car. How do you distinguish U.S. v. Whitehead? In terms of? In terms of almost the same facts where we said that it's overwhelming physical evidence of Whitehead's guilt is determinative. He was stopped at the border with 54.85 pounds of marijuana, where it's an estimated, concealed in the front and rear bumpers and rear doors of the vehicle he was driving. And they said that's almost overwhelming evidence of guilt. Right. I believe, thinking back to Whitehead, that case focused on the commercial large quantity of drugs in a vehicle and basically the panel finding that if you're driving a car and there's that much, that big of a quantity of narcotics inside the car, then that's strong evidence of guilt. But I think other cases have come out differently and looked at... Okay, but how does that differ from this case? Well, because in this case, number one, it was not his car, which is important in these sorts of cases. If you're driving a car that's yours and there's drugs inside, it's a little harder to explain how the stuff got in your own car. It was not his car. He gave a plausible and viable account as to why he was... Let me interrupt. I jotted down a few things which struck me as kind of supporting the notion that there was overwhelming evidence of guilt here. Tell me if I got it down correct. First of all, I know that he picked up the car after he crossed the border, so it was not his car. He made some sort of statements he was driving it to Riverside to get another car, which turned out not to be so. But I drugs elaborately hidden in the gas tank of the car that was driven across the border, although by a different driver. The car had an overwhelming smell of gasoline. The defendant's explanation for how he came by the car changed significantly every time he told it, nor was there any plausible explanation in isolation. The defendant drove erratically and appeared to flee from police officers, eventually pulling into a gas station after the officers succeeded in following him off the freeway, despite not needing gas. And last, the defendant was arrested for the identical conduct several years ago, which you want to talk about, I suspect, when he was found driving across the border with drugs hidden in the gas tank on a different car. That would be the 404B type of dynamic. Of course. But isn't that collectively kind of overwhelming evidence to support the jury verdict? It's going to take some time, but I can go through each one of those points and explain why I think the answer is accumulative. Sure. But I think also you have to look at his explanation in an accumulative fashion. And he dealt with all these issues. For instance, with the smell of gas in the car, he said, well, it was an older car, and so I didn't think anything of the fact that it did smell somewhat like gasoline. With respect to the way he drove, there was no attempt to flee like the government tried to make it sound. He was driving down I-15. The agent was following him, then drove next to him for a couple of miles, then pulled in front of him. He exited to go to the mobile convenience store, and the agent pulled in behind him. And the fact that he got out of his car and said to the agent, you know, what's going on here, I think that's what anybody would say given what the agent did in his marked vehicle on the interstate. With respect to the statements, he gave the statements to the agent at the convenience store in English. He doesn't speak English well. He's a Spanish speaker, and there were some inconsistencies. But his story that he came across was going to go painting, and they got the call, and was going to take the vehicle up to, and he said, Riverside versus Downey. It's sort of the whole Los Angeles area. But that proved not to be correct. I mean, I think they checked on that, and that story was just a fabrication. Well, at trial, he talked about the fact that he was going to go to Downey instead of going to Riverside, and so the statements weren't exactly correct. But these cases never have perfect defenses. They never do. There's always And these cases always have large amounts of drugs, like the Whitehead case talked about. But if a bunch of drugs... You may want to, you've got a minute and a half left. Sure, just this is one last statement. If a large amount of drugs in a car was enough to make it overwhelming, there would never be acquittals, and there would never be hung juries. And so I would submit that the evidence, this case was much closer than the government would on behalf of the United States. Your Honor, the appellant in this case has not met his burden of demonstrating that either an error in admitting expert testimony or the error in admitting deconfliction testimony would have affected the outcome of this case, because the evidence of the defendant's knowledge of the drugs in his car in this case was overwhelming. Just to address a couple of the points that we just went through, the testimony was that the smell of gasoline in this car was overwhelming. It wasn't consistent with that of an older car. It was so strong that when the Border Patrol agent drove at a short distance from the gas station to the checkpoint for further inspection, he said he had to roll down the windows because it was overpowering. The other Border Patrol agent also testified that this was an overwhelming smell that caused her concern for her canine unit's health. It was so strong. So given that smell, and given the defendant's erratic driving, again, this was not someone just pulling off of the highway. The testimony from the Border Patrol agents was that once they got in front of him, he cut across three lanes of traffic, drove across the sort of land that separates the exit from the freeway, and then, even then, once he got down the hill, continued driving in sort of an aimless manner, and cut across three more lanes, and then parked next to a gas pump, even though he admitted that he actually didn't need gas and that the gas tank was full. In addition, the defendant in this case took the stand, and you can read, even the transcript of this defendant's testimony jumps out as incredible. The story that he told to the jury that, essentially, he couldn't cross his personal truck because initially he claimed the gas tank on his truck was broken. Then he changed to say that the registration was bad and he needed to get a smog test. Then he admitted that a series of lies that he told to the Border Patrol agents when he was first encountered, taking together his testimony, which the jury saw firsthand and could judge his credibility, was, essentially, a disaster for this defendant. So, I think, given that testimony, given the smell, the quantity, the value, his erratic behavior, the shifting stories, and the lies that he told to the Border Patrol agents when he was encountered, the evidence of his knowledge was overwhelming, and any error would have been harmless as to the issues. Thank you, counsel. Okay, thank you, Your Honor. Ed and Lester, is there any other questions? Just to briefly answer your question about the 404B evidence, that evidence never should have come into the trial in the first place. The district court gatekeeping as to a 404B issue is to say, did the defendant actually commit the prior act? And we have a 2010 detention at the border. He's driving the vehicle, there's drugs in that vehicle, but the case was ultimately dismissed. There was never any admission of knowledge, never any... That's unnecessary for a 404B analysis. You don't have to show that that person was found guilty of the underlying crime. I agree, but you have to find... Show that he committed the underlying crime, and in this case... There's plenty of evidence about that. And it was a four year separation time... Five years. And similar circumstances. I think it goes to knowledge, lack of mistake, and things of that nature on the 404B. It seems that way to me. And Lester Court, if there aren't any more questions, I'll submit the case. Thanks, Your Honor. Thank you. The argument is the case is argued will be submitted.
judges: Canby, Reinhardt, Block